WALLA WALLA WATER CO. v. CITY OF WALLA WALLA et al.

(Circuit Court, D. Washington, S. D.    March 20, 1894.)

1. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS — FEDERAL JURISDICTION —MUNICIPAL CORPORATIONS.

A city was authorized by its charter to grant waterworks privileges to private companies, to itself erect waterworks, or to purchase or condemn waterworks erected by others. It granted the right to a corporation, and stipulated that it would not itself erect competing waterworks for a period of 25 years, but this was not to prevent it from purchasing or condemning the plant at any time. *Held*, that the stipulation was valid; and that a breach thereof by the city would impair the obligation of the contract, within the meaning of the federal constitution; and that, therefore, a federal court would have jurisdiction to enjoin the city from constructing waterworks, or issuing bonds therefor.

2. MUNICIPAL CORPORATIONS — LIMIT OF INDEBTEDNESS — ANNUAL PAYMENTS FOR WATER SUPPLY.

A city, whose limit of indebtedness was fixed at $50,000, contracted with a water company for a supply of water for municipal purposes, in consideration of an annual payment of $1,500, for 25 years. The city, however, had the right to determine the contract for any default on the water company's part. *Held* that, as the city was only obliged to make the annual payment when it was earned, the aggregate of such payments could not be considered as a debt of the city, which, added to other debts, would exceed the limit allowed, and render the contract void.

This was a bill for an injunction by the Walla Walla Water Company, a corporation, against the city of Walla Walla, to restrain the latter from proceeding to construct and establish works for supplying the city with water, and issuing negotiable bonds whereby to obtain money for that purpose. Application for injunction pendente lite granted, and demurrer to bill of complaint overruled.

George Turner, for complainant.

W. T. Dovell and L. C. Gilman, for defendants.

HANFORD, District Judge.    The city of Walla Walla is a municipal corporation of the state of Washington, having a charter granted to it by a special act of the legislature of the territory of Washington in the year 1883 (Laws Wash. T. 1883, p. 270). The powers conferred upon the city by said charter include the following:

"Sec. 4. The city of Walla Walla shall have power * * * to provide fire engines and other apparatus and a sufficient supply of water, and to levy and collect special taxes for these purposes, not to exceed in any year three-tenths of one per centum upon the taxable property within the city." "Sec. 10. The city of Walla Walla is hereby authorized to grant the right to use the streets of said city for the purpose of laying gas and other pipes

·intended· to furnish the inhabitarts of said city with light, or water to any persons or association of persons for a term not exceeding twenty-five years: * * * provided, always, that none of the rights or privileges herein granted shall be exclusive nor prevent the council from granting the same rights to others. Sec. 11. The city of Walla Walla shall have power to erect and maintain water works within or without the city limits or to authorize the erection of the same for the purpose of furnishing the city or the inhabitants thereof with a sufficient supply of water, * * * and to enact all ordinances and regulations necessary to carry the power herein conferred into effect, but no water works shall be erected by the city until a majority of the voters, who shall be those only who are freeholders in the city, or pay a property tax therein, on not less than five hundred dollars' worth, of property, shall at a general or special election vote for the same. Sec. 12. Said city is hereby authorized and empowered to condemn and appropriate so much private property as shall be necessary for the construction and operation of such water works and shall have power to purchase or condemn water works already erected, or which may be erected, and 'may mortgage or hypothecate the same to secure to the persons from whom the same may be purchased the payment of the purchase price thereof." "Sec. 103. The rights, powers and duties and liabilities of the city of Walla Walla and of its several officers shall be those prescribed in this act and none others, and this is hereby declared a public act." "Sec. 105. The limit of indebted- ness of the city of Walla Walla is hereby fixed at fifty thousand dollars."

The bill of complaint alleges that, in the year 1887, the city, pursuant to an ordinance authorizing the same, entered into a contract with the complainant, whereby the complainant was authorized to lay pipes for conducting water in the streets of the city, and to supply the inhabitants with water, and the complainant undertook to supply water for use of the city in extinguishing fires, flushing sewers, and all other municipal purposes for a period of 25 years. The contract also contains the following provisions:

"The city of Walla Walla shall have the right to erect in a proper and workmanlike manner, and maintain at its own expense, in such manner as to prevent leakage, as many fire hydrants on the mains of the water company as it shall see fit, not exceeding one (1) at each street intersection; and, in case of fire, the city, through its officers and employés, shall have all reasonable and necessary control of the water company's water, mains, and reservoirs for the extinguishment thereof, and, for the purpose of drilling' fire companies, may use such water as may be necessary therefor, not often- er than once in two (2) weeks for each fire company; and the city may also use such water as may be necessary and convenient in and about its engine houses and other city buildings, and to supply any and all city fire cisterns. The city of Walla Walla agrees to pay to said Walla Walla Water Company for the matters and things above enumerated, quarter yearly, on the 1st days of July, October, January, and April of each year, at the rate of fifteen hundred dollars ($1,500) per annum, for the period of twenty-five (25) years, from and after the date and passage of Ordinance Number 270, the first quarterly payment to be made on the 1st day of October next (Oc- tober 1, 1887).

"The city of Walla Walla will during said period, without expense for water, be allowed to flush any sewer or sewers it may hereafter construct, at such time during the day or night as the water company may determine, and under the direction and supervision of such officers as the city may from time to time designate, and not oftener than once in each week. For all the purposes above enumerated, said Walla Walla Water Company will furnish an ample supply of water for domestic purposes, including sprink- ling lawns, and an ample supply of good wholesome water, at reasonable rates, to consumers, at all times during the said period of twenty-five years; and this contract is voidable by the ·city of Walla Walla so far as it re- quires the payment of money upon the judgment of a court of competent

jurisdiction whenever there shall be a substantial failure of such supply, or a substantial failure on the part of the water company to keep or perform any agreement or contract on its part herein specified, or in this contract herein contained; but accident or reasonable delay shall not be deemed such failure, and, until this contract has been so avoided, the city of Walla Walla will not erect, maintain, or become interested in any waterworks except the one herein referred to, save as hereinafter specified. Neither the existence of this contract, nor the passage of Ordinance Number 270, shall be construed to be, or be, a waiver of or relinquishment of any rights of the city to take, condemn, and pay for the water rights and works of said company or any company at any time; and, in case of such condemnation, the existence of this contract shall not be taken into consideration in estimating or determining the value of the said waterworks of the said Walla Walla Water Company."

In June, 1893, an ordinance was passed providing for the creation of waterworks and the laying of pipes by the city for supplying the city and inhabitants thereof with water, and for issuing bonds to the amount of $160,000, to provide the necessary funds for such purpose; and, pursuant to the provisions of said ordinance, an election was held, whereby the propositions embraced in said ordinance were approved by a sufficient majority of the legal voters. Without providing for the purchase, or condemnation of the works established by the complainant, the city is now proposing to sell the bonds so authorized, and to become a competitor of the complainant in the business of supplying the inhabitants of the city with water, although the complainant has on its part fully complied with all the requirements of said contract. At the time of entering into said contract, it was impossible for the city to have procured sufficient funds for the construction of waterworks sufficient to afford an adequate supply of water, either by taxation or by incurring debts, without exceeding the limitations fixed by its charter, and no individual or private corporation could have been found willing to invest the large amount necessary for constructing said works without obtaining concessions such as this contract contains. It will be impossible for the complainant to successfully compete against waterworks created and maintained at public expense; therefore the present scheme of the city, if carried out, will be destructive of the complainant's property, and equivalent to confiscation thereof. The complainant contends that proceedings having such effect, if authorized by the laws of the state, violate the clause of the constitution of the United States prohibiting laws which impair the obligations of contracts, and on that ground invokes the jurisdiction of a national court for its protection. In their argument upon this hearing, counsel for the defendants have admitted that, if the contract set forth in the bill of complaint is not unlawful, the case is within the jurisdiction of this court, and the complainant is entitled to the relief prayed for on the ground above specified.

Their contention is that said contract is void for the following reasons: First. The power to construct and maintain waterworks, conferred upon the city by its charter, is a part of its legislative and governmental functions, which cannot be abrogated by any act or contract of the city. Second. The contract to pay for supplying the city with water for municipal purposes in quarterly install-

ments, at the rate of $1,500 per annum for 25 years, created a debt which, together with other existing indebtedness, amounted to a sum exceeding $50,000, contrary to the 105th section of the charter. The arguments on both sides are well supported by authorities, but it is not practicable for me at this time to attempt a review or analysis of them. I think they can all be harmonized with the conclusion which I have reached. To establish and operate works for gathering and storing a sufficient supply of water, to protect the same from pollution, and to distribute the same to all parts of a city, requires a large expenditure of capital and labor, and such expenditures are expected to yield remunerative profits to investors. It is also necessary, for the purposes mentioned, to exercise the power of eminent domain and the police power of the state. Therefore such works combine the character of a governmental agency and of a private business enterprise. In the case of the city of Walla Walla, the legislature invested the corporation with ample power to exercise all the governmental functions necessary for the purpose, and also authorized it to absorb the business of furnishing water for the public and private uses of the city, and secure the profits. The city was not, however, required by its charter to at once construct or acquire its own waterworks. The limitations upon the taxing power and right to incur debt contained in the charter rendered such an undertaking on the part of the city impossible at the time when this contract was made. In view of the conditions existing under said limitations, the provisions of the charter granting to the city power to authorize individuals or a private company to construct and operate waterworks are quite as important as, and of greater practical utility than, the power conferred upon the city to engage in the water business on its own account. It was undoubtedly intended that, by means of such a contract as the one pleaded in this case, the city should secure a supply of water at least during the time necessary for it to acquire sufficient means to own its water system. The city, in making this contract with the complainant, exercised a power granted to it expressly and specifically by the legislature, and the wisdom or reasonableness of its action in this regard cannot be questioned in the courts. 1 Dill. Mun. Corp. § 328.

In further refutation of the argument, it is to be observed that the contract reserved to the city the right to acquire the property of the water company, and absorb its business, on fair and just terms; so that the contract itself is in no sense obnoxious to the objection that it deprives the city government of power conferred by the legislature. Having, by means of this contract, induced the water company to make large investments of capital in improving and enlarging its plant, the city cannot at this time honestly destroy the value of the plant, instead of purchasing or condemning and paying for the same according to its promise. The city has not divested itself of any of its powers, and the contract constitutes no bar to the exercise thereof; but it has bound itself to take over the plant now in service, and render just compensa-

tion therefor, whenever it does elect to furnish water by means of works owned by it. The present scheme is therefore unlawful, because it is an attempted repudiation of a binding promise.

The aggregate amount to be paid under the contract by the city cannot be regarded as a debt incurred in excess of the amount limited by the 105th section of the charter, for, by the terms of the contract, the city became obligated to pay in quarterly installments, as the same should be earned by compliance with the contract on the part of the water company. If any part of the money is not earned, the city will not have to pay it. If the money shall be earned, the city will avoid an accumulation of debt by paying according to the contract. Notwithstanding the very respectable authorities cited by counsel for the city, I hold that, while the contract creates a binding obligation, it does not create a debt. The item of expense for water under this contract stands precisely the same as other items of regular current expenses incidental to running the government, and provided for by contracts or ordinances of the city.

Let an injunction issue as prayed for.