[No. 3230.   Decided October 9, 1899.]

NORTH SPRINGS WATER COMPANY, *Appellant,* v. CITY OF TACOMA, *Respondent.*

CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACTS—DUE PROCESS OF LAW.

Where the franchise granted by a city to a water company to supply water is not exclusive, the subsequent erection and operation of a water plant by the city in the same territory, under powers granted it by the legislature, does not constitute an impairment of the obligation of a contract nor a taking of private property without due process of law.

MUNICIPAL CORPORATIONS—CHARTER POWERS—GRANT OF FRANCHISE
TO SUPPLY WATER—POWER OF CITY TO COMPETE—ESTOPPEL.

Where a city is empowered to supply itself with water, either
by granting the right to any person or corporation or by erecting
and maintaining a water system itself, or by purchasing or con-
demning any existing system, and there is no restriction on the
city's employing any or all methods, the power granted is not in
the alternative; and the grant of a franchise to a corporation to
supply water would not estop the city from afterwards building
and operating its own works in competition.

Appeal from Superior Court, Pierce County.—Hon.
THOMAS CARROLL, Judge. Affirmed.

*Charles S. Fogg,* for appellant.

*W. H. Pritchard* and *Walter M. Harvey,* for respondent.

The opinion of the court was delivered by

REAVIS, J.—Bill in equity by the North Springs Water
Company, a corporation, against the city of Tacoma, a
municipal corporation, to enjoin the city from extending
its water system in that part of the city of Tacoma situated
in sections 24 and 25, and in what is known as "Old
Tacoma" and where the plaintiff owns a plant and has its
mains and pipes, and is supplying water to the inhabitants,
or most of them, of the area designated. The facts are
substantially as follows: Plaintiff (here appellant) is the
owner of certain springs of fresh water in the northwestern
part of Tacoma, and owns and operates a system of water
works, by means of which it conveys the water flowing
from the springs to the city, and to its inhabitants living
in that vicinity. This system was constructed and operated
by plaintiff and its grantors under franchises granted by
the respondent city. The construction of the works was
begun in 1890, and the franchise or right is claimed under
ordinance No. 350 of the city of Tacoma, approved Sep-
tember 8, 1890. The material portions of the ordinance
are as follows:

" Section 1.    That R. B. Mullen and his assigns are hereby granted the right, privilege and authority of erecting and maintaining water works in that part of the City of Tacoma, in the County of Pierce, and State of Washington, which is known and described as sections twenty-four (24) and twenty-five (25), in township twenty-one (21), north, of range two (2) east of the Willamette meridian, and of supplying that part of said city and its inhabitants with pure and fresh water, for which the said R. B. Mullen and his assigns are hereby authorized to charge the consumers thereof reasonable rates."

" Sec. 2.    That for the purpose aforesaid the said R. B. Mullen and his assigns are hereby granted the right, liberty and privilege of laying down, re-laying, connecting, disconnecting and repairing such and so many pipes along, through and under the avenues, streets, lanes, alleys and public highways and public parks and ground of said part of said city of Tacoma, as may be necessary, proper and convenient for supplying the said part of said city and the inhabitants thereof with pure and fresh water and for that purpose to make connections between the street mains and pipes and the dwellings or other buildings or structures of the consumers."

" Sec. 5.    The City Council hereby reserves the right to regulate by ordinance and fix the charges of said company to the consumers for the water privileges."

" Sec. 6.    The council reserves the right to amend this ordinance any time in its judgment it deems it necessary."

" Sec. 8.    The rights, privileges and authority granted in this ordinance shall continue for 25 years."

Sections 3 and 4 relate to the method of laying the mains and pipes under the regulations of the city.   By § 7 the city council reserves the right to order mains where in its judgment it is deemed necessary.

The above ordinance No. 350 was amended by ordinance No. 368, on the 11th day of October, 1890, by repealing §§ 5 and 8 thereof and amending § 5 to read as follows:

" Sec. 5.    The City Council of the City of Tacoma hereby reserves the right to regulate by ordinance and fix

reasonable charges which said company may charge to the consumers for water privileges;"

and amending § 8 to read as follows: .

" Sec. 8.   The rights, privileges and authority granted in this ordinance shall continue for thirty years."

On the 18th of October, 1890, a charter was adopted and officers thereunder elected by the city of Tacoma under the act of the state legislature entitled "An Act to provide for the government of cities having a population of twenty thousand or more inhabitants and declaring an emergency to exist," approved on the 24th day of March, 1890.  Section 52 of the charter provides:

" To provide for erecting, purchasing, appropriating or otherwise acquiring water works, gas works or electric light plants, within or without the corporate limits of said city, to supply said city and its inhabitants with water and light, or to authorize the construction of same by others, and to regulate and control the use and price of the water or light so supplied."

Section 203 of the charter contains the following provision:

" The city shall have the right to condemn and appropriate any water works, gas works, electric plant, street railway, for the purpose of managing, operating and controlling the same by the city, and all such appropriations shall be made as provided in this article, except that before passing the resolution provided for, the city council shall first submit to the qualified electors of the city the proposition so to appropriate or condemn said property, and if a majority of votes cast be in favor of appropriation and not otherwise, such resolution shall be passed and such proceedings taken; said vote to be taken at a general or special election."

Section 218 provides as follows:

" When water is supplied by any person or corporation to said city or to any department, it shall not be paid for at more than the rate established by the City Council."

The city charter under which the franchise to appellant was granted was enacted by the legislative assembly of Washington Territory on the 4th of February, 1886. Subdivision 5 of section 48 (Laws 1885-86, p. 197) thereof contains, among other things, in defining the powers of the city government, the following:

" To purchase or condemn, enter upon and take any lands, water works, or gas works within the corporate limits for public use and for public squares, streets, wharves, docks, parks, commons, cemeteries, . . ."

Subdivisions 7 and 8 (Laws 1885-86, pp. 197, 198) are as follows:

" Seventh—Water Works. To erect and maintain water works within or without the city, or to authorize the erection of the same for the purpose of furnishing the city with a sufficient supply of water; but no such works shall be erected by the city until a majority of the voters of the city, at a general or special election, assent thereto; and has power to and are hereby authorized to condemn and appropriate so much private property that shall be necessary for the construction and operation of said gas works or water works within the city limits, the appropriation to be made as provided by chapter twelve of this charter.

Eighth—Franchises.—Length of. When the right to build and operate such works is granted private individuals or incorporated companies by said city, they may make such grant inure for a term of not more than fifty years and authorize such individuals or company to charge and collect from each person supplied by them such water rents as may be agreed upon between said person and corporation so building said works; and said city is authorized and empowered to enter into a contract with the individuals or company constructing and operating said works, to supply said city with water for such purposes as may be necessary for the health and safety thereof, and to pay therefor such sum or sums as may be agreed upon between said contracting parties. Nothing herein contained shall be construed to interfere or abridge the right and powers of the city council to regulate and fix the rate of compensa-

tion as provided by subdivision twenty-five of section forty-eight of this charter."

Authority was also given to regulate and fix from time to time rates of compensation which might be charged and collected by any person or corporation for water or gas furnished within the city limits. Section 8, art. 1, of the constitution of Washington, in effect in 1889, is as follows: "No law granting irrevocably any privilege, franchise or immunity shall be passed by the legislature;" and § 12 of the same article declares:

" No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

On the 12th of November, 1875, the legislative assembly of Washington Territory passed a special act incorporating the city of Tacoma (which is now a part of the respondent city), and on the 5th of November, 1883, an ordinance (No. 26) was passed by said city of Tacoma, granting to one Fuller the right and privilege of conducting water into the city of Tacoma (Old Tacoma), and through the streets and alleys thereof, for the purpose of supplying said city and its inhabitants with pure, fresh water. The charter of said city (Laws 1875, p. 166) contains the following provision, the authority under which said ordinance was adopted:

" Sec. 6.   The board of trustees shall have power to make such by-laws and ordinances not inconsistent with the constitution of the United States and the laws of this Territory, as they may deem necessary to carry out the purposes of this act. They shall have power to prevent and remove nuisances; to prohibit disorderly conduct; to provide for licensing public shows and lawful games; to regulate and establish markets; to construct pumps, aqueducts, reservoirs or other works necessary for duly supplying the city with water; to lay out, name, alter, keep open

and repair the streets and alleys of the city; to provide such means as they deem necessary to protect the city from injury by fire."

It does not appear that Fuller took any action under the rights and privileges granted him by the ordinance, but on the 27th of June, 1891, he executed to appellant's grantor "the right and privilege of conducting water into the city of Tacoma (Old Tacoma), and through the streets and alleys thereof, for the purpose of supplying said city and its inhabitants with pure, fresh water, and other purposes," and licensed and empowered his grantee, the grantor of appellant, to lay water pipes and conduct water through and along the streets and alleys of a certain portion of the city of Tacoma for the purpose of supplying the city and its inhabitants with water and other purposes, and empowered appellant's grantor to use the franchise granted by ordinance No. 26; and under this franchise appellant now furnishes water to another district in the respondent city, of limited area, commonly called "Old Tacoma." But the territory of the present respondent city was all embraced within one charter under the above act of the legislative assembly of Washington Territory on February 4, 1886, and all ordinances not inconsistent therewith were continued in force. By ordinance No. 32, approved June 9, 1884, the city of Tacoma granted the right and franchise of supplying the city with water and light to said city and its inhabitants to the Tacoma Light & Water Company, a corporation; and during a part of the year 1893, and prior thereto, this corporation supplied certain portions of the city of Tacoma, including the business part and a majority of the settled portions of the city, with water by means of a water system and plant owned and operated by the said Tacoma Light & Water Company. During the year 1893 respondent city purchased from the said Tacoma Light & Water Company its water plant and

system, and the water company conveyed to the city of Tacoma, by deed, describing all of its real estate, reservoirs, machinery, water and water rights, and also its franchises granted to it by the city under ordinance No. 32; and since said purchase the respondent city has operated and carried on the business heretofore carried on by the Tacoma Light & Water Company. The appellant company has at all times since the construction of its works under ordinance No. 358, above mentioned, operated and supplied the people in the district mentioned in the ordinance, and at all times possessed and enjoyed the privileges of the streets and alleys where its mains and pipes were placed; and said appellant has paid the municipal, county, state and school taxes regularly assessed upon its property. It has also supplied from time to time the respondent city with water for city purposes in such district, and been paid therefor. It was also found by the superior court:

" That the quantity of water supplied in said district by the plaintiff and its assignors has been and is inadequate and insufficient for the use of the inhabitants in that portion of the city of Tacoma hereinbefore described in which plaintiff's water plant is situate; and has been and is insufficient for use by the city for extinguishment of fires and other municipal purposes."

The 25th finding of fact made by the superior court is as follows:

" That the defendant now proposes and has decided to extend its water mains and water system into the said territory, more particularly described in finding 26, now occupied and supplied with water for domestic and other purposes and uses by plaintiff herein, and is about to locate, lay down, and operate its water mains side by side on the same streets now occupied by plaintiff's said water mains, and to make the same accessible to each householder in said territory, and to furnish water for domestic and other purposes to the inhabitants of said territory in competition with the water so furnished by this plaintiff."

Appellant has, from first to last, invested about $40,000 in its water system for supplying the people of the district mentioned with water.

1.  Appellant maintains that the operation of the city's water system within the district that appellant has been supplying will injure, and may destroy, the value of its property, and that the franchises under which it is operating are contracts made with the city and that the city, by its intended extension of its own water system, will become a competitor of appellant, and that such competition is a violation of the contract contained in the franchises granted by the city; and it invokes the protection of the state constitution and of the federal constitution (§ 10, art. 1, and § 1, art. 14, of amendments).   It may be observed that ordinance No. 358, granting the franchise to appellant's grantor, Mullen, was under the authority of the legislative charter of the Territory of February 4, 1886, and also that the state constitution was in effect at the time the ordinance was made.   It would seem that the charter adopted by the freeholders of the city of Tacoma in 1890 has but little bearing upon the controversy.   It is conceded by the learned counsel for appellant that the city was without power to grant any exclusive franchise to appellant; that, after appellant received its franchise, the same rights and privileges could be granted to any other person or private corporation.   Indeed, it appears from the record that at the time appellant's grantor, Mullen, obtained the franchise to supply water in the certain district mentioned and in the city, a franchise to supply water and light to the city had theretofore been granted to the Tacoma Light & Water Company.   Thus, at any rate, it was understood by all parties when Mullen obtained his franchise, that he might meet the competition of other private water companies.   The power granted to the city under the act of February 4, 1886, was to purchase or con-

demn water works 'or gas works within the corporate
limits for public use; and subdivisions 7 and 8 of § 48 also
authorized the city by ordinance to erect and maintain
water works, or to authorize the erection of the same, for
the purpose of furnishing the city with a sufficient supply
of water. But no works could be erected by the city until
a majority of the voters had assented thereto. When the
right to build and operate such works was granted private
individuals or companies by the city, the grant was limited
to a term of not more than fifty years.

It is contended with much earnestness by counsel for the
appellant that the grant to the city was to construct water
works, or to authorize the construction of the same by
others; that it was empowered to pursue either method in
obtaining water works, and that the grant was in the
alternative. Both methods, however, could not be em-
ployed at the same time. The same contention was made
in the case of *Thomas v. City of Grand Junction,* before
the supreme court of Colorado, 56 Pac. 665. There the
general statutes (§ 3312, subd. 67, as amended in 1893)
authorized the city to purchase or erect water works, or to
authorize the erection of the same, and, in effect, are
similar to the charter of respondent city. The court ob-
served:

"The contention of the plaintiff is that the word 'or,'
as it appears in subdivision 67, is used in the disjunctive
and alternative sense, and that, the city having elected to
authorize the construction of waterworks for the supply-
ing of water to the city and its inhabitants, its power in
the premises was exhausted, and it has no power to con-
struct waterworks of its own. The defendant city insists
that the word is not used in such a sense, and that, if the
contention of plaintiff be allowed, it would defeat the evi-
dent intent and purpose of the act, and would render it
obnoxious to section 11, art. 2, of the state constitution,
which provides that 'no law making any irrevocable grant
of franchises, privileges or immunities, shall be passed by

the general assembly.' It further contends that, to carry out the obvious purpose and legislative intent, the word 'or' should read 'and,' and that the judicial construction and interpretation should be that the city should be entitled to exercise all of the powers therein granted. We think that the contention of defendant is correct, and that it is fully sustained by reason and authority. It is a well-settled rule of statutory construction that all words and phrases used in a statute shall be understood and construed according to the approved and common usage of the language, and that some meaning shall be given to every word used. . . . It is equally, however, a well-settled rule of construction, that if no sensible meaning can be given to a word or phrase, or if it would defeat, manifestly, the real object of the enactment, it should be eliminated; also that, for the same reason, words may be rejected as surplusage; also, to carry out the intention of the legislature, another word may be read for the word used, where the word used would manifestly defeat the legislative intent, and the substitution of the other would carry it out. These may be said to be exceptions to the general rule as above announced, but the exceptions, as will be seen by an examination of the authorities, are almost, if not quite, in as general use as the rule itself. Especially with reference to the words 'or' and 'and' has it been frequently necessary to invoke this latter rule. As said by Mr. Sutherland: 'The popular use of "or" and "and" is so loose, and so frequently inaccurate, that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their accurate meaning is more readily departed from than that of other words, and one read in place of the other, in deference to the context.' Suth. St. Const., § 252. Mr. Endlich says: 'To carry out the intention of the legislature, it is occasionally found necessary to read the conjunctions "or" and "and" one for the other. (Indeed, these words are said to be convertible into each other, as the sense of the enactment and the necessity of harmonizing its provisions may require.' Endlich, Interp. St., § 303."

In *Thompson Houston Electric Co. v. City of Newton,*
42 Fed. 723, the facts were very similar to those in the
case at bar.   The complainant, a private corporation, ob-
tained the right to erect, maintain and furnish lights to
private citizens, and also, by contract with the city, to fur-
nish lights for the streets and public places of the city;
and, while so performing its obligations under the fran-
chise, the city determined to establish and maintain elec-
tric light plants, to be owned and operated by the city.
The laws of Iowa enacted "that cities should have power
to establish and maintain electric light plants, or to author-
ize the erection of the same;" and the contention was there
made that the city had the option given it and that it could
originally have erected its electric light plant, but, having
elected to authorize private parties to do so, it was estopped
from afterwards entering the field as a competitor, and,
while the light company did not have an exclusive right
under its agreement with the city, yet the city should not
be allowed to compete with a private company.   Mr. Justice
SHIRAS said:

"It is doubtless true that, if the city enters the field by
the erection of its own plant, it will have an advantage over
the complainant; yet it does not follow that the court can
interpose and restrain the city from erecting the contem-
plated plant.   As already stated, the city did not grant any
exclusive rights to complainant; and the latter, when it
erected its plant, took the chance as to future competition.
.   .   .   The statute confers the right so to do upon the
city; and I can see no ground justifying the court in inter-
posing by injunction, and preventing the city from estab-
lishing its proposed plant."

It will be noted that the cases referred to above each
answers the argument of the appellant.

A case which also has much that is similar in the dis-
cussion is that of *State ex rel. Hamilton Gas & Coke Co.
v. City of Hamilton,* 47 Ohio St. 52 (23 N. E. 935), and

also *Hamilton Gas Light & Coke Co. v. Hamilton City,*
146 U. S. 258 (13 Sup. Ct. 90). Analogous reasoning is
found in *Long v. City of Duluth,* 49 Minn. 280 (32 Am.
St. Rep. 547, 51 N. W. 913); *Long Island Water Supply
Co. v. Brooklyn,* 166 U. S. 685 (17 Sup. Ct. 718); *State
ex rel. Attorney General v. Cincinnati Gas Light & Coke
Co.,* 18 Ohio St. 262; *Colby University v. Village of Can-
andaigua,* 69 Fed. 671.

While it is true that supplying water to the inhabitants
of the city and to itself does not originate in an exercise
of the ordinary police powers of a municipal corporation,
yet in this state, since the territorial organization, and it
may be also said that generally in this country, municipal
charters very generally confer this power upon cities. The
respondent city was authorized, under its charter of 1886,
to supply itself and its inhabitants with pure, fresh water.
In the exercise of this power it could exercise a choice of
modes. It could purchase or condemn any existing system,
or it could grant the right to any person or corporation to
lay mains and pipes and furnish water, or it could erect a
system itself. There does not seem to be any prescription
in its charter of the method, and there is no cogent impli-
cation that the city is restricted to any specific method in
its power to build and operate water works. It would
seem, therefore, that the city council could not absolutely
bind the city in the future so that it could not exercise one
of its specifically granted powers under its charter; and the
well-known and accepted rule, that in grants of this char-
acter doubts must be resolved in favor of the public, re-
quires more than mere negation to infer that the council
has attempted to estop the city from the fair exercise of
such granted power. The familiar rule that a privilege
creating a monopoly cannot be given without the grant
from the sovereign, the legislature, has been extended in

this state, and that power taken from the legislature by the constitution; and § 8 of article 1 of the constitution, *supra,* is also pertinent in considering the general policy of the state. We do not think the grant of the power to construct, or authorize others to construct, works to supply water to a city and its inhabitants, is in the alternative; but the original grant authorized it to provide water for the city, without limitation of the manner in which it may be done.

It was observed by the supreme court of the United States, in *Hamilton Gas Light & Coke Co. v. Hamilton City, supra:*

"It may be that the stockholders of the plaintiff supposed, at the time it became incorporated, and when they made their original investment, that the city would never do what evidently is contemplated by the ordinance of 1889. And it may be that the erection and maintenance of gas works by the city at the public expense, and in competition with the plaintiff, will ultimately impair, if not destroy, the value of the plaintiff's works for the purposes for which they were established. But such considerations cannot control the determination of the legal rights of the parties."

Again, it was observed by the same authority in *Curtis v. Whitney,* 13 Wall. 68:

"Nor does every statute which affects the value of a contract impair its obligation. It is one of the contingencies to which parties look now in making a large class of contracts, that they may be affected in many ways by state and national legislation."

Commenting upon this, the court in *Hamilton Gas Light & Coke Co. v. Hamilton City, supra,* says:

"If parties wish to guard against contingencies of that kind they must do so by such clear and explicit language as will take their contracts out of the established rule that public grants, susceptible of two constructions, must receive the one most favorable to the public."

So, if it be conceded that the respondent city was authorized by the terms of its charter to make a contract that it would not itself supply water to the inhabitants in the limited district where the appellant's mains and pipes were placed, it did not make such agreement. There are no words of exclusion in the privilege granted appellant by the ordinance. There are no words of limitation upon the right of the city. There apparently is no plain inference that can be raised from the ordinance that such was the intention of the parties. If such intention existed, it would doubtless have been expressed in the contract.

2.    Counsel for appellant relies upon two cases, one of them, *White v. City of Meadville,* 177 Pa. St. 643 (35 Atl. 695). But this case is readily distinguished from the one under consideration here. There, under the corporation act, water companies were authorized to supply cities with water; and provision was made for the purchase by the cities so supplied, at their option after twenty years, of the plant of the company, at a price regulated by its net cost. Another act which the court construed *in pari materia* gave cities exclusive right to supply themselves with water, or to contract with any company for the erection of a water plant and give it the exclusive right to furnish water to the city. Thus, the legislative grants authorized an exclusive contract between the city and the water company. The court observed, after citation and construction of the statutes:

"Here, then, plainly, were two distinct methods by which the municipality could supply its citizens with water. By putting either method in operation the same end was accomplished. . . . The primary grant was the power to supply; the secondary one, the grant of two distinct methods of exercising the power, either of which might be adopted. There was no grant of power to put both methods in operation at the same time."

It was also observed that the water company, by the terms of its charter, was authorized to make an exclusive contract.

The other authority is an eminent one, and, upon the construction of the principle of the federal constitution invoked by appellant, controlling,—*City of Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1 (19 Sup. Ct. 77). But the facts before the court there are substantially variant from those in the case at bar. The special charter of the city of Walla Walla, by act of the territorial legislature (Laws 1883, p. 270), invested the city with power "to provide a sufficient supply of water," and "to grant the right to use the streets of said city for the purpose of laying gas and other pipes intended to furnish the inhabitants of said city with light or water, to any persons or association of persons for a term not exceeding twenty-five years," . . . "provided that none of the rights or privileges herein granted shall be exclusive, nor prevent the council from granting the same rights to others." It was also provided that the city of Walla Walla should have power to erect and maintain water works within or without the city limits, or to authorize the erection of the same, for the purpose of furnishing the city with a sufficient supply of water, and to enact all ordinances necessary to carry the power conferred into effect; but no water works should be erected by the city until a majority of the voters should vote for the same. It was also given power to purchase or condemn water works already erected, or which might be erected. Under the powers contained in its charter, on March 15, 1887, the city by ordinance granted, under certain restrictions, to the water company, for the period of twenty-five years from the date of the ordinance, the right to lay, place and maintain all necessary water mains, pipes, connections and fittings in all the highways, streets and alleys of the city, for the purpose of

furnishing the inhabitants thereof with water, and reserved the right to maintain as many fire hydrants as it should see fit, and all reasonable and necessary control of the water for the extinguishment of fires. The ordinance also provided 'that' the city should pay to the water company, for the matters and things enumerated in the ordinance, quarter yearly, $1,500 per annum, for the period of twenty-five years, after the date of the passage of the ordinance. The city was to have the right to flush any sewer it had constructed or might thereafter construct. It was further provided:

"Sec. 7. For all the purposes above enumerated said Walla Walla Water Company shall furnish an ample supply of water, and for domestic purposes, including sprinkling lawns, shall furnish an ample supply of good wholesome water, at reasonable rates, to consumers at all times during the said period of twenty-five (25) years; and this contract shall be voidable by the city of Walla Walla so far as it requires the payment of money, upon the judgment of a court of competent jurisdiction, whenever there shall be a substantial failure of such supply, or a substantial failure on the part of said company to keep or perform any agreement or contract on its part, herein specified or in said contract contained. But accident or reasonable delay shall not be deemed such failure. And until such contract shall have been so avoided, the city of Walla Walla shall not erect, maintain or become interested in any water works except the ones herein referred to, save as hereinafter specified.

Sec. 8. Neither the existence of said contract nor the passage of this ordinance shall be construed to be or be a waiver of or relinquishment of any right of the city to take, condemn and pay for the water rights and works of said or any company at any time, and in case of such condemnation the existence of this contract shall not be taken into consideration in estimating or determining the value of said water works of the said Walla Walla Water Company."

After this ordinance had been in force for about six years the city undertook to provide for the construction of a system of water works of its own for the purpose of supplying the city and its inhabitants with water. The water company filed a bill in equity to enjoin the city from proceeding to construct and operate these works. It was maintained by the complainant water company that the contemplated action of the city violated the contract contained in the ordinance granting to the water company the right to supply water. It was concluded by the court that the contract was not an exclusive one and did not grant a monopoly, and it was observed:

"Particularly is this so when taken in connection with a further stipulation that the city shall not erect water works of its own. This provision is not devoid of an implication that it was intended to exclude only competition from itself, and not from other parties whom it might choose to invest with a similar franchise."

And it was observed further:

"Nor do we think the contract objectionable in its stipulation that the city would not erect water works of its own during the life of the contract. There was no attempt made to create a monopoly by granting an exclusive right to this company, and the agreement that the city would not erect water works of its own was accompanied, in section 8 of the contract, with a reservation of a right to take, condemn and pay for the water works of the company at any time during the existence of the contract. Taking sections 7 and 8 together, they amount simply to this: That, if the city should desire to establish water works of its own, it would do so by condemning the property of the company, and making such changes in its plant or such additions thereto as it might deem desirable for the better supply of its inhabitants; but that it would not enter into a direct competition with the company during the life of the contract. As such competition would be almost necessarily ruinous to the company, it was little more than an agreement that the city would carry out the contract in good faith."

The controlling consideration seemed to be that the city was within its powers in making the contract with the water company; that it was incidental to the main power given the city to supply water; and from this conclusion it is apparent from the terms of the ordinance itself that the intended action of the city was a violation of the contract.

In a case where the facts are closely analogous to those at bar,—*Westerly Water Works Co. v. Town of Westerly,* 80 Fed. 611,—where the grant was made to a water company to use the highways so long as the inhabitants should be reasonably supplied with water, exempting it from taxation twenty-five years, and exacting an obligation to supply water to the town and sell its works to the town, the town was not excluded from the right to construct water works of its own; and the court observed:

"We think, therefore, that a sound distinction can be made between a grant or a contract which absolutely excludes all competition, and one which merely excludes the competition of the town until it shall make due compensation to the company."

And referring to the case of *Walla Walla Company v. City of Walla Walla, supra,* as reported in 60 Fed. 957, it is said:

"The city in explicit terms agreed not to erect, maintain or become interested in any other water works. . . . It is also stated that the city had bound itself to take over the plant and render just compensation whenever it did elect to furnish water·by means of works owned by it. In the present case there is no express agreement that the town will not compete, nor that in case it should elect to compete it will purchase the works. Such agreement must be deduced from construction, and in view of the rule that all doubt in the construction must be resolved against the company and in favor of the public, there is great difficulty in inferring such agreement."

As before observed, the city of Tacoma, in the ordinance which conferred the franchise upon appellant, did not expressly or by necessary implication agree not to erect its own water works, and the circumstances surrounding the parties at the time were not such as to impel the inference that such contract was in contemplation by them.

The judgment is affirmed.

GORDON, C. J., and DUNBAR and FULLERTON, JJ., concur.