[No. 18004.   Department Two.   September 10, 1923.]

MONROE WATER COMPANY, *Appellant,* v. THE TOWN OF MONROE *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS (364) — STREETS — GRANTS OF WATER FRANCHISE—EXCLUSIVENESS.   Where a franchise to a water company provided that it is not in any manner to be exclusive, the city has the right to construct a municipally owned plant, notwithstanding it will result in loss to the water company and its bondholders, who are presumed to know the condition of the franchise.

ESTOPPEL (27)—EQUITABLE ESTOPPEL—AGAINST MUNICIPALITIES.   A water company which remained silent while the city expended over $50,000 upon the construction of· a municipally owned system, is estopped to deny the right of the city to construct the same.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered December 23,

[1]Reported in 218 Pac. 6.

1922, dismissing an action to enjoin the acquisition of a municipal water system, after a trial on the merits. Affirmed.

*Wm. D. Totten, Joseph P. Totten,* and *Robt. M. Jones,* for appellant.

*Cooley, Horan & Mulvihill,* for respondents.

PEMBERTON, J.—Prior to June 24, 1914, appellant purchased, at a price of $30,000, the water works system within the municipal limits of the town of Monroe operated under a franchise granted by the town. Thereafter a new franchise ordinance was passed, number 146, and accepted by appellant, having a provision therein as follows:

"Section 12. That the rights, privileges and franchises granted hereby shall exist, continue and be in force for a period of thirty (30) years from the date of the passage of this Ordinance, but are not in any manner to be deemed exclusive. The Town of Monroe reserves the right at any time after the expiration of one (1) year from the date of this Ordinance to purchase all of the business, property, assets, tools and other material used in collecting, impounding, clarifying and distributing water to the Town of Monroe and its citizens, for all purposes by the grantee or its successors and thereby terminate this franchise."

Appellant has expended, since the purchase, the sum of $18,000 in replacements and extensions of the system. Bonds were issued against the water works plant in the amount of $60,000. It is claimed that, for the last three years, there has been a loss of $3,000 per year in its operation.

The source of supply of the water is the Skykomish river, which flows by the town, with its intake three-fourths of a mile therefrom. The water filters through the sand and gravel into a well. During the high

water, the ground between the river and the well over-flows. Some of the citizens of the town, in the summer time, complained that the water was offensive to the smell and taste. Appellant endeavored to remedy this but was unable to entirely satisfy the patrons of the water company.

On January 11, 1922, the town passed ordinance number 181, entitled:

"An ordinance providing for the acquiring, constructing and maintaining of a water works system for the town of Monroe, Washington, and its inhabitants, specifying and adopting a system and plan for the acquisition by said town of said water works system, declaring the estimated cost thereof as near as may be, providing for the payment thereof by the issuance of general negotiable coupon bonds in the sum of Fifty-two Thousand ($52,000) Dollars and water works revenue bonds, payable solely out of 60 per cent. of the gross revenues of such water system in the sum of Thirty-two Thousand ($32,000) Dollars, and providing for the holding of a special election at which the qualified voters of said town of Monroe may vote for or against said proposition."

At an election held on February 21, 1922, there were 405 votes cast for the plant and 53 votes against the plant.

On June 28, 1922, the town passed and adopted ordinance number 184, entitled as follows:

"An ordinance changing and modifying the system or plan for the acquisition by the town of Monroe of a waterworks system, specified and adopted by ordinance No. 181 of said town entitled: 'An ordinance providing for the acquiring, constructing and maintaining of a water works system for the town of Monroe, Washington, and its inhabitants, specifying and adopting a system or plan for the acquisition by said town of said water works system, declaring the estimated cost thereof as near as may be, providing for the payment

therefor by issuance of general negotiable coupon bonds in the sum of Fifty-two Thousand ($52,000) Dollars, and water works revenue bonds, payable solely out of 60 per cent. of the gross revenue of such water system, in the sum of Thirty-two Thousand ($32,000) Dollars, and providing for the holding of a special election at which the qualified voters of said town of Monroe may vote for or against said proposition,' providing for the payment of the added cost of said system occasioned by such changes and modifications by the issuance of water works revenue bonds in the sum of Ten Thousand ($10,000) Dollars, payable solely out of 20 per cent of the gross revenues of such water system, and providing for the holding of a special election at which the qualified voters of said town of Monroe may vote for or against said proposed changes and modifications.''

This ordinance changed the supply from Lake Cochran to a series of springs known as Sykes Springs, and at the election held on July 17, 1922, there was but one vote cast against the modified plan proposed in ordinance number 184.

In June, 1923, a committee of the town council approached Mr. Marshall, president of the appellant company, for the purpose of purchasing the water system of appellant. Mr. Marshall insisted that the question of the price to be paid should be arbitrated. There were no further negotiations concerning the purchase, and the town proceeded with the construction of the municipal water system. The bonds were sold and the construction of the head work at the sources of supply had been completed. A pipe line seven and one-half miles long had been laid, a concrete storage tank had been constructed, and a large portion of the pipe had been delivered to the contractor in charge of the work. Payments had been made upon the contract in excess of $50,000.

The appellant instituted this action to secure an injunction against the city to prevent the city from impairing its franchise and destroying its property. Both parties concede that the population of Monroe is too small to justify two water systems. At the hearing for a temporary injunction, appellant withdrew its request and no temporary injunction was issued. The town proceeded with the work and the municipal water plant has been fully constructed and is now in operation.

After hearing, the trial court entered judgment of dismissal, against which judgment this appeal is taken.

The ordinance granting the franchise to appellant providing for a term of thirty years makes the further provision concerning the rights and privileges granted, that they "are not in any manner to be deemed exclusive."

In the case of *North Springs Water Co. v. Tacoma,* 21 Wash. 517, 58 Pac. 773, 47 L. R. A. 214, we held:

"The respondent city was authorized, under its charter of 1886, to supply itself and its inhabitants with pure, fresh water. In the exercise of this power it could exercise a choice of modes. It could purchase or condemn any existing system, or it could grant the right to any person or corporation to lay mains and pipes and furnish water, or it could erect a system itself. There does not seem to be any prescription in its charter of the method, and there is no cogent implication that the city is restricted to any specific method in its power to build and operate water works. It would seem, therefore, that the city council could not absolutely bind the city in the future so that it could not exercise one of its specifically granted powers under its charter; and the well-known and accepted rule, that in grants of this character doubts must be resolved in favor of the public, requires more than mere negation to infer that the council has attempted

to estop the city from the fair exercise of such granted power.

"So, if it be conceded that the respondent city was authorized by the terms of its charter to make a contract that it would not itself supply water to the inhabitants in the limited district where the appellant's mains and pipes were placed, it did not make such agreement. There are no words of exclusion in the privilege granted appellant by the ordinance. There are no words of limitation upon the right of the city. There apparently is no plain inference that can be raised from the ordinance that such was the intention of the parties. If such intention existed, it would doubtless have been expressed in the contract."

And in this Tacoma case we approved the rule laid down in the case of *Hamilton Gas Light & Coke Co. v. Hamilton City*, 146 U. S. 258, as follows:

"It may be that the stockholders of the plaintiff supposed, at the time it became incorporated, and when they made their original investment, that the city would never do what evidently is contemplated by the ordinance of 1889. And it may be that the erection and maintenance of gas-works by the city at the public expense, and in competition with the plaintiff, will ultimately impair, if not destroy, the value of the plaintiff's works for the purposes for which they were established. But such considerations cannot control the determination of the legal rights of the parties."

"If parties wish to guard against contingencies of that kind they must do so by such clear and explicit language as will take their contracts out of the established rule that public grants, susceptible of two constructions, must receive the one most favorable to the public."

It seems to be the settled law of this state that a grant of a franchise or privilege is to be strictly construed in favor of the public, and that an ordinance granting a franchise to a water company wherein it is provided that the city would not contract with any

other person or persons, corporation or corporations for a supply of water does not preclude the city from constructing a water system of its own during the term of the franchise; and certainly where the franchise itself provides that the privileges and rights granted thereunder are not exclusive, the city has the right and authority to construct a municipally-owned water plant without in anywise violating the terms of the franchise, and it will be presumed that the appellant and those holding bonds of appellant secured upon the plant have at all times known of the condition of the franchise.

In this case, however, appellant remained silent and took no action whatever against the city to protect its rights, if any it had, and the city expended over $50,-000 upon the construction of the municipally-owned system before the filing of the complaint in this case. Appellant is estopped to deny the right of the city to proceed with the construction and maintenance of the municipally-owned water plant, and the city is not required to purchase the holdings of appellant.

The judgment of the trial court is affirmed.

MAIN, C. J., FULLERTON, TOLMAN, and PARKER, JJ., concur.