[No. 19580. Department One. July 21, 1926.]

INTER CITY AUTO STAGE COMPANY, *Respondent*, v. BOTHELL BUS COMPANY, *Appellant*.[1]

[1] CORPORATIONS (87)—STOCKHOLDERS—RIGHT TO SUE ON BEHALF OF CORPORATION. An action by and on behalf of a corporation is sufficiently shown to have been authorized where there were only two stockholders in the corporation, one of whom was secretary, and they authorized attorneys to bring the action at a time when the corporation had ceased to function except for the purpose of collecting assets.

[2] FRAUD (1)—ELEMENTS OF ACTUAL FRAUD—PROMISSORY REPRESENTATIONS. Promissory representations that a party intended and wished to buy a stage route owned by another company, cannot be the basis for an action for fraud in inducing the contract, where they were all merged in the original agreement entered into, and the facts did not show any want of such intention at the time the representations were made.

[3] ACCORD AND SATISFACTION (9)—EVIDENCE—SUFFICIENCY. Findings that there was no settlement and discharge of claims by an accord are supported by the evidence, notwithstanding positive evidence of one witness to that effect, where there was much evidence to the contrary.

[1]Reported in 247 Pac. 1040.

[4] MONOPOLIES (2)—CONTRACTS (41)—RESTRAINT OF COMPETITION
—PUBLIC FRANCHISES. Constitution, art. 12, § 22, prohibiting
monopolies is not violated by a contract whereby one of two
applicants for a license to operate a stage route sold its rights
to the other and withdrew its application, subject to the approval
of the department of public works, in view of the constitution-
ality of the law authorizing the granting of an exclusive fran-
chise.

[5] CONTRACTS (150)—PERFORMANCE OR BREACH—ACCEPTANCE OF
PERFORMANCE. A party receiving and using the consideration
named in its proposal for a sale of its rights to a stage route
cannot assert that the contract was without consideration.

[6] SAME (164)—ACTIONS FOR BREACH—DEFENSES. It is no defense
to an action for the consideration agreed to be paid for the sale
of one's interest in a stage route that the seller's rights were not
exclusive.

[7] CORPORATIONS (153) — REPRESENTATION — PERSONS WHO MAY
REPRESENT CORPORATION. Where a complaint by a corporation is
verified by its secretary it will be presumed that the suit was
authorized by the corporation.

[8] COSTS (44, 45)—ITEMS ALLOWABLE—CERTIFIED COPIES OF REC-
ORDS. The cost of a certified copy of a public record which was
competent evidence is properly taxed as part of the costs of
suit.

Appeal from a judgment of the superior court for
King county, Douglas, J., entered May 23, 1925, upon
findings in favor of the plaintiff, in an action upon con-
tract, tried to the court. Affirmed.

*Wright & Catlett,* for appellant.

*Howard H. Startzman* and *S. H. Steele,* for respond-
ent.

HOLCOMB, J.—In this action respondent sued to re-
cover an alleged balance of five thousand dollars upon
a contract evidenced by a proposal signed on behalf of
appellant, dated September 10, 1921, and an acceptance
of that proposal by respondent and performance of all
conditions precedent by it.

After trial to the court without a jury, the lower court made findings of fact, conclusions of law and entered judgment in favor of respondent for a balance of $3,571.18, and costs.

The complaint alleges that respondent was, and at all times mentioned in the complaint had been, a corporation organized and existing under the laws of the state of Washington; that on January 15, 1921, and continuously thereafter until the sale by it of all its rights to appellant, respondent and appellant were each operating separate passenger automobile stages for compensation between Seattle, Bothell, Woodinville, Hollywood, and intermediate points, and were active competitors of each other; that on September 12, 1921, both parties had pending before the state board of public works an application for a certificate of convenience and necessity for the transportation of passengers for hire over the same route; that on that day appellant in writing proposed to respondent, and to Victor Peterson and Earl Bothell, contingent upon approval thereof by the state board of public works, that respondent execute and deliver to appellant an assignment of its rights to a certificate of public convenience and necessity; that Peterson and Bothell execute similar assignments of any and all rights on their part; that respondent appear with appellant before the state department of public works and request the approval of the proposition therein made; that respondent consent that the sole certificate for the route be issued to appellant, and to have its application for a certificate of public convenience and necessity for that route denied; that, immediately upon the furnishing of such certificate to appellant by the state department of public works, appellant, in consideration thereof, would execute and deliver to respondent its

promissory note in the sum of $2,000, payable on demand, and the balance, in the sum of $5,000 to be paid by appellant by a trade acceptance on appellant to be endorsed by Joseph Silver, an officer and stockholder of appellant, to be made due and payable in ninety days; that such payments were to be made only after the furnishing to appellant of a resolution, to be passed by at least ninety per cent of the stockholders of respondent and its board of trustees, authorizing respondent to accept the proposal and do and perform all things required for the acceptance thereof, and reciting that due consideration had been given to the proposal of appellant, and that it was determined to be for the best interests of respondent to consummate the deal as proposed.

The complaint further alleges that the proposition of appellant was accepted and that, on September 27, 1921, at a special meeting of the stockholders and board of trustees of respondent, the proposition was accepted by the stockholders and the board of trustees, more than ninety per cent of the stock of respondent attending, including Peterson and Bothell, each and all of whom voted to accept the proposal, and passed and furnished to appellant a resolution of the stockholders and board of trustees accepting appellant's proposal and declaring that the acceptance was for the best interests of respondent; that respondent, Peterson and Bothell thereupon executed and delivered assignments of all their rights and interests in and to any certificate of public convenience and necessity for such automobile stage route; that subsequently, in September, 1921, respondent with appellant appeared before the state department of public works and requested the approval of that department of the sale and of the stipulation between the parties, and asked that a sole certificate

for the stage route be issued to appellant; that respondent then and there consented to have its application denied, and thereby performed each and all of the things necessary and required of it in the acceptance of the proposals of appellant, abandoning its rights to a certificate of public convenience and necessity for the route, and obtaining a sole certificate to be issued to appellant.

The complaint then alleges that, after the parties had appeared before the state department of public works and after a hearing thereon, the department, as requested by respondent, did deny its application for a certificate for the route, and at the same time granted appellant a certificate of public convenience and necessity to operate on that route; and that thereupon respondent immediately ceased to operate stages or carry passengers on that route.

It is then alleged that, on September 23, 1921, appellant delivered to respondent its promissory note for $2,000, which it thereafter paid; that appellant refused to execute its trade acceptance for $5,000, although the sole certificate of public convenience and necessity had been issued to appellant at the request of respondent. It is then alleged that there is due from appellant the sum of $5,000 with six per cent interest from October 1, 1921.

In response to a motion therefor, a bill of particulars was furnished by respondent, which sets forth the proposal of appellant to respondent, the acceptance thereof, the copies of respondent's corporation minutes which were required by the proposal, the ratification thereof by the stockholders and trustees, and copies of the assignments which were made by Peterson and Bothell to one Hamilton, and the assignments from Hamilton to respondent; that there was no assignment

from respondent to appellant, but that the stipulation between them, made before the state department of public works, amounted to the same thing as an assignment.

To the complaint the defendant filed its second amended answer, among other things denying that respondent was at all times mentioned in the complaint a domestic corporation; admitting that, in September, 1921, both parties were operating automobile stages over the route, and had pending before the state department of public works applications for certificates of public necessity and convenience for the transportation of passengers for hire over the route mentioned; that respondent consented to have its application for a certificate denied; that a certificate was issued to appellant on its application, and that it never executed any trade acceptance to respondent; admitted that it had paid the sum of $2,000; that it had paid no other sum, and denied that any other sum was due.

Six affirmative defenses were then set up, which are so voluminous as to preclude their being set out in full in the length that may be accorded an opinion in this case.

The first affirmative defense alleged false and fraudulent representations by respondent and its officers relied upon by appellant, inducing its entering into the contract, to its damage in the sum of $2,307.13. The nature of these representations, so alleged, was, in brief, that respondent, through its officers and stockholders, represented to the officers and stockholders of appellant that they desired to purchase the Bothell Bus Company, and its rights, and represented that respondent had been operating on the route in good faith on January 15, 1921, and therefore was entitled, by virtue of the statutes of this state, to a certificate of

convenience and necessity, and would be entitled to continue to operate in competition with appellant; that, induced by these representations, the officers and stockholders of appellant authorized the proposal contained in the instrument dated September 10, 1921; that appellant

" . . . . is now informed and believes that plaintiff and its officers did not, at the time of making such alleged representations, have any intention of purchasing the property of appellant or of taking advantage of the option to itself by virtue thereof, but were using the alleged intention to purchase the option solely for the purpose of inducing appellant's officers and stockholders to enter into an agreement providing for the payment of a certain sum of money, and that plaintiff never had any right to any certificate of convenience and necessity, and had not been operating on the route in good faith on January 15, 1921, and the representations were false and fraudulent and made with a design to induce the defendant to enter into a contract whereby it should agree to pay plaintiff, for its agreement not to compete, a large sum of money, much in excess of any value such competition ever had."

It is then alleged that appellant never entered into any contract with respondent, but that the officers and stockholders mentioned, relying upon the false and fraudulent representations set forth, made the proposal set forth in the letter of September 10, 1921, and caused to be paid from the funds of appellant the $2,000 which had been paid, and in addition, from the funds of appellant, the sum of $2,007.13, in payment of accounts of respondent, which payments were unauthorized, and would not have been made but for the false and fraudulent representations of respondent, its officers and stockholders; that the rights of respondent, if any, were worth not to exceed $5,000, and could have been bought for that sum.

A demurrer to this affirmative defense was sustained.

The second affirmative defense alleged that payments amounting to $4,007.13 were made, which was not demurred to and which was sustained by the evidence, and there is no appeal therefrom.

The third affirmative defense alleges that, if it should be held that there was a contract between the parties, there had been an accord and satisfaction of the indebtedness thereunder. A demurrer to this defense was overruled, and evidence was introduced by both parties and much of the trial centered around it.

The fourth affirmative defense alleges that, if any contract was entered into between the parties, the contract was illegal, contrary to public policy and the law, statutes and constitution of this state, and is therefore void and unenforcible. A general demurrer to this defense was sustained.

The fifth affirmative defense alleges that, if any contract should be held to have been entered into, there was no valid legal consideration therefor, and the payment of the $4,007.13 from the funds of the appellant corporation was entirely improper, and appellant is entitled to recover the same. A demurrer to this defense was sustained.

The sixth affirmative defense alleges that, if there was ever a valid contract between the parties, or any valid consideration therefor in the beginning, such consideration failed, in that respondent never secured from Peterson and Bothell assignments of their alleged rights to operate on the same route, and that it was implied, and a vital part of the proposal, that after respondent had accepted it, Peterson and Bothell, and all others from whom respondent procured its rights should cease to operate; that Peterson and Bothell were stockholders of respondent corporation, and took part

in the proceedings and sale, but that the corporation turned back to them, without consideration, the cars which they had previously operated and thus enabled them to proceed and operate their cars in competition with appellant, and that they did so operate for at least four weeks, and that respondent was a party to such operation, and appellant had been damaged in the sum of forty dollars per day during the four weeks, or a total of $1,120; that appellant was entitled to a set-off and counter-claim in the sum of $1,120. A demurrer to this affirmative defense was also sustained.

Respondent replied denying the allegations of the second affirmative defense, except as to the payment of $2,000, and denied the allegations of the third affirmative defense.

The lower court held that appellant had not sustained the burden of proof upon its third affirmative defense alleging an accord and satisfaction between the parties.

[1] Appellant also at the trial urged that the suit was not authorized by and on behalf of the corporation by any valid corporate action; that there was no legal authorization by any legal officers or trustees.

At the commencement of the introduction of evidence in the case, it was shown that there were only two stockholders remaining in the corporation, one of whom was represented by an attorney-in-fact, whose general power of attorney was introduced, and the other, Startzman, one of the original incorporators and stockholders of the company, and secretary of the corporation at all times during its existence, who had never been succeeded by any other and was still secretary of the corporation.

We are of the opinion that the authorization by all the stockholders of the corporation to their attor-

neys to bring and maintain the suit herein at a time
when the corporation had ceased to function, except
for the purpose of collecting funds, was ample author-
ity to bring and maintain the action. The finality of
the judgment herein will bar any future recovery by
or on behalf of the corporation or its stockholders.
This we consider the test.

[2] Appellant contends with great vigor and
earnestness that the demurrer to the first separate
affirmative defense was erroneously sustained.

In that affirmative defense, it was alleged that re-
spondent never had any right to a certificate of public
convenience and necessity by reason of its having been
operating in good faith on January 15, 1921; that it
professed a desire to purchase appellant's line, if and
when it should secure a certificate of public convenience
and necessity, and desired to have an option upon ap-
pellant's line until such certificate should be secured, at
which time respondent would exercise the option and
purchase the property.

Appellant insists that there were allegations of two
direct misrepresentations as to material facts: First,
that respondent wanted to buy appellant's right, and
had a present intention to exercise the option; and
second, that the respondent had been in fact operating
on that route in good faith on January 15, 1921, and
was therefore entitled to that right under the law.

Appellant cites texts and authorities to the effect
that a representation of an intention as existing may,
if false, avoid a contract induced thereby, many of
which cases quote the famous dictum of Lord Bowen,
to the effect that a "misstatement of an existing fact
as to the state of a man's mind is as much a fact as the
state of his digestion"; citing 12 R. C. L., par. 21, p.
256; 83 N. J. L. 492; *Adams v. Gillig*, 199 N. Y. 314, 92

N. E. 670; *Kritzer v. Moffat,* 136 Wash. 410, 240 Pac. 355.

In the last case cited from this court, we also quoted the dictum of Lord Bowen, and the text from 26 C. J., 1093, to the above effect. In that case the defendant had made oral promises as to foreclosure and sale of real estate to plaintiff, whereby she was lulled into security that it was unnecessary for her to take steps to redeem the property, and by reason of which she did not redeem the property upon foreclosure sale, and, but for which promise, she would have done so. The promise was false and worked to the detriment of the promisee. It is a very different case from this one. Most of the authorities were referred to on the question of promissory statements and when they may be grounds of actions for deceit. An examination of the text of 12 R. C. L., cited by appellant, and also § 14, p. 244, under the same topic, shows that the general rule is, that fraud cannot be predicated upon statements promissory in nature and relating to future action, but proceeds to show that there are exceptions to the general rule such as existed in the case before us in *Kritzer v. Moffat, supra.*

In this case, whatever representations had been made by respondent to appellant had been merged into the written agreement, and the attempt of appellant was to avoid the terms of the written agreement by oral evidence. The proposal made by appellant to respondent, and accepted by respondent, is as follows:

"The Bothell Bus Company makes this proposition to the Inter City Auto Stage Company, Victor Peterson and Earl Bothell, contingent upon the approval thereof by the department of public works of the state of Washington.

"1. The Inter City Auto Stage Company will at once execute and deliver to the Bothell Bus Company an assignment of its rights, whatever they may be, to a

certificate of public convenience and necessity for the automobile stage run between Seattle, Bothell, Woodinville, Hollywood, and intermediate points, and at the same time Victor Peterson and Earl Bothell will execute similar assignments of such rights, if any they have, to such certificate. The Bothell Bus Company and Inter City Auto Stage Company will then appear before the department of public works and request the approval of this arrangement and consent to have the sole certificate for this run issued to the Bothell Bus Company and the certificate of the Inter City Auto Stage Company for which application is pending, denied.

"(2.)    The Bothell Bus Company immediately on the issuance of said certificate by the department of public works will execute and deliver to Inter City Auto Stage Company its promissory note in the sum of two thousand dollars ($2,000), payable on demand after the furnishing to the Bothell Bus Company by the Inter City Auto Stage Company of the resolution hereinafter mentioned to be passed by the shareholders of the Inter City Auto Stage Company at the shareholders meeting to be called in accordance with the by-laws of said company. The balance, to-wit: the sum of five thousand dollars ($5,000), shall be payable by a trade acceptance of the Bothell Bus Company payable in ninety days at its bank, endorsed by Joseph Silver. The said note and the said trade acceptance shall be accepted by the Inter City Auto Stage Company in full payment of all its rights to such a certificate of public convenience and necessity, and the said note and the said trade acceptance to the Inter City Auto Stage Company shall be accepted by the said Victor Peterson and Earl Bothell as full consideration for the assignments of their rights.

"(3.)    At the same time the Bothell Bus Company will execute and deliver to the Inter City Auto Stage Company an option to purchase all of its present rolling stock and equipment and its said certificate of public convenience and necessity, four months after date, for the sum of twenty thousand dollars, payable ten thousand dollars in cash, and the balance at the rate

of five hundred dollars per month, secured by notes and mortgage upon all rolling stock and equipment and such certificate, all as herein more particularly provided. Simultaneously the Bothell Bus Company shall execute to the Inter City Auto Stage Company a bill of sale of all of its present rolling stock and equipment of all kinds, and an assignment of the said certificate of public convenience and necessity, and the Inter City Auto Stage Company shall also execute to the Bothell Bus Company a mortgage in the sum of ten thousand dollars upon all property covered by the said bill of sale, and upon said certificate, said mortgage to secure a series of notes payable monthly commencing five months thereafter, to the Bothell Bus Company at the rate of five hundred dollars per month, at seven per cent interest, interest to date from four months after making. All of these instruments are to be deposited in escrow in the Northwest Trust State Bank, in the city of Seattle, under the agreement to simultaneously be made that if the Inter City Auto Stage Company shall pay into said bank for the Bothell Bus Company within four months thereafter the sum of ten thousand dollars in cash, time being strictly of the essence, then the bill of sale and assignment of the certificate issued by the Bothell Bus Company shall be delivered to the Inter City Auto Stage Company and the mortgage and notes shall thereupon be delivered to the Bothell Bus Company, and if such payment is not made within said period, then the bill of sale and the assignment of the certificate shall be delivered back to the Bothell Bus Company for cancellation, and the mortgage and notes shall be delivered back to the Inter City Auto Stage Company for cancellation, and all rights of the latter company to acquire the assets of the Bothell Bus Company and the said certificate shall thereupon terminate. If the Inter City Auto Stage Company shall exercise its said option to purchase the said assets and the said certificate from the Bothell Bus Company it shall thereupon return to the Bothell Bus Company or to said escrow holder for it, the note of two thousand dollars and the trade acceptance executed by the Bothell Bus Company, and if said note

and trade acceptance shall have been negotiated, or for any other reason cannot then be returned, then the cash payment to be made to the bank by the Inter City Auto Stage Company in the event it exercised said option, shall be seventeen thousand dollars instead of ten thousand dollars, and if the said note and trade acceptance shall be returned and there shall have been paid upon the same by the Bothell Bus Company any sum or sums, such sum or sums shall be required to be added and shall be added to the ten thousand dollars cash payment upon account of the purchase price, and the escrow agreement shall so provide. It is understood that the present rolling stock and equipment of the Bothell Bus Company, or its equivalent, and only that, together with the certificate is to be covered by the option at the figures hereinabove stated.

"(4.)    It is further understood that the Bothell Bus Company is now arranging the immediate addition to its rolling stock of two limousine-type cars and necessary equipment and that in the event of the exercise of said option the interest of said Bothell Bus Company in said cars will also be conveyed by appropriate conveyance and the Inter City Auto Stage Company will assume and agree to discharge any and all obligations outstanding for said cars and equipment, and will increase its cash payment to the bank, upon the exercise of the option herein mentioned, by the amount which the Bothell Bus Company shall then have paid on account of the purchase of said cars and equipment, information as to said amount to be furnished to the Inter City Auto Stage Company and to the escrow holder by the Bothell Bus Company at any time within the option period, and the escrow agreement shall so provide.

"(5.)    It is also understood that the Bothell Bus Company will in the acquisition of said cars and equipment make no heavier payments than shall be necessary, it being the intention that in the exercise of said option by the Inter City Auto Stage Company the initial cash payment by said company shall be increased as little as may be by the acquisition of said cars and equipment.

"(6.) It is understood that the Inter City Auto Stage Company is a corporation of the state of Washington, capitalized at the sum of one hundred thousand dollars, of which five thousand was preferred stock and the remainder common stock. That the five thousand dollars of preferred stock is all issued. That of the common stock there is issued and held by Earl Bothell stock of the par value of $6250.00, and by Victor Peterson, stock of the par value of $6250.00, and by C. D. Hamilton stock of the par value of $5000.00, and by Major Fay stock of the par value of $1650.00, and by H. H. Startzman $500.00, and that none of the remaining common stock has been issued. That the foregoing as well as all of the following things to be undertaken and done by the Inter City Auto Stage Company will be authorized by resolution of the directors of the said company and by resolution of the shareholders of said company concurred in by at least ninety per cent of the outstanding stock; the said resolutions to be passed at meetings to be held immediately, notices of which respectively will be waived by all of the trustees and by the shareholders holding at least ninety per cent of the stock, and that a meeting of the shareholders will thereafter be called in accordance with the by-laws of the company, and at such meeting a resolution will be passed confirming the other action by at least ninety per cent of the shareholders, the said resolutions to recite that due consideration has been given to the proposition and that it is believed that it is to the best interests of the corporation to make this transaction. It being understood by the Bothell Bus Company that that is the sense of at least ninety per cent of the shareholders.

> Yours very truly,
> "Bothell Bus Company
> "By Joseph Silver, Pres.
> "W. W. Whipple, Sec."

It will be observed that this proposal contained an option for respondent to purchase the rights and property of appellant for a given sum, upon stated terms, and within four months. The four months would ex-

pire·January 18, 1922.   Respondent accepted the pro-
posal of appellant to purchase its rights in the prem-
ises, and respondent never exercised the option to pur-
chase the property of appellant, but, by accepting the
other proposal, rejected the option to purchase the
property and rights of appellant.   The proposal emi-
nated from appellant.   Having become the written con-
tract between the parties, and being the proposal of
appellant itself, and respondent having accepted the
proposal that it sell to appellant certain rights for a
certain sum upon stated terms, it is difficult to see how
appellant can contend that it could show that respond-
ent never wanted to buy appellant's rights, but deceit-
fully so pretended, or that appellant could deny that
respondent had been operating upon the route in ques-
tion in good faith on January 15, 1921.   The entire
agreement between the parties is deemed to have been
merged·in the writing. *Adams v. Gillig,* 199 N. Y. 314,
92 N. E. 670.

We conclude that the demurrer to the first affirma-
tive defense was properly sustained.

[3]   The second claim of appellant is, that the find-
ings of the trial court to the effect that there was no
settlement and discharge of the claims involved in this
action is not supported by sufficient evidence.

We have examined the entire statement of facts, in
this case, and all of the exhibits, and while one witness
for appellant testified very positively that there was a
settlement of the claim of respondent, contingent upon
the matter of appellant receiving a *sole* certificate of
necessity and convenience, and the elimination of com-
petition upon the route—in other words, that, unless
competition should be eliminated and a *sole* certificate
secured by appellant, no further liability should be im-
posed upon appellant for the payment of the unpaid

purchase money—there is much positive evidence to the contrary.

Much of the argument of appellant is based upon the assertion that respondent sold appellant the sole right to operate upon the route in question without competition. The contract entered into had no such provision. It only contracted for respondent to sell to appellant all its rights, "whatever they may be." Respondent could not influence the action of the state board of public works, nor guarantee that the state board of public works would not permit others to operate upon the route. The evidence shows that there was another stage company operating through stages from Everett to Seattle, a part of which route was over the route of appellant from Bothell to Seattle. Both parties had attempted to get the state board of public works to restrict the Everett stage operator in taking passengers for hire between Seattle and Bothell. It appears that the state board of public works never took such action, but that was no fault of respondent. After appellant had secured a certificate of convenience and necessity to operate upon this route, it was incumbent upon it, if anyone, to see that other stage companies concerned were limited. Respondent no longer had any interest in it, and would probably not have been heard even to protest. The sole certificate, which appellant makes so much of as being sold to it by respondent, was a sole certificate as between these two parties. It could be no more, regardless of what either or both parties desired. The evidence also shows, contrary to the claim of appellant, that respondent carried out its part of the agreement. It procured the rights of all other parties who had been operating upon the route, whose rights it had used for some time prior to and after January 15, 1921, and up to the time of the granting of the certificate of necessity and convenience

"on stipulation of the parties"—respondent and appellant, to appellant by the state board of public works, after which all those parties and respondent discontinued operating any competing stage line over this route. Certain outstanding bills and debts owed by respondent were paid by appellant, aggregating $2,007.13, which appellant insists were paid under an agreement that, if competition on the route were not eliminated by respondent, should, in addition to the $2,000 paid on the contract being accepted, be in full. There was positive evidence to the contrary, including statements sent from the office of appellant to respondent not claiming credit therefor on the balance due.

We are satisfied that the finding of the trial court, that there was no settlement and discharge of the claims involved, is amply supported by the evidence.

[4] It is next urged that the contract sued on is void because prohibited by Article XII, § 22, of the state constitution.

It seems somewhat inconsistent with the insistence of appellant that it is entitled to a *sole* certificate as against all the world, eliminating competition over this route. The constitutional provision is that prohibiting monopolies and trusts. It is said that we have decided the identical question in *Manson v. Hunt,* 82 Wash. 291, 144 Pac. 45.

In that case, however, the contract itself contained a clause to the effect that "the parties recognize that the agreement is illegal and incapable of enforcement in any court of law or equity." The contract in this case contained no such clause, and contained no provision in any manner fixing the price, limiting the production or regulating the transportation of any product or commodity. A case involving the effect of the same constitutional provision against trusts and monopolies is *Lumbermen's Trust Co. v. Title Insurance*

& Investment Co., 248 Fed. 212, by the circuit court of appeals of this circuit, in which the same contention was made. That court held that a contract combining several abstract companies and providing that some of them should thereafter not operate in Tacoma, and which was intended to suppress ruinous competition, was not open to attack under the above constitutional provision of Washington.

That court very aptly said that, "before such contracting parties can be absolved from their solemn obligations, on the ground that they are invalid as creating a monopoly, it must be shown that their agreements are manifestly injurious to the public, for public policy is as much concerned in holding persons to their contracts as in prohibiting contracts in restraint of trade." It was also pointed out in that case that "the attack upon the legality of these contractors comes not from the public, nor from anyone who claims to have been injured thereby, but from parties who deliberately entered into them." That is the case here. The party who deliberately entered into it, and in fact proposed it, is the one contending that it is banned by the constitutional provision against monopolies and trusts.

We have, in cases too recent and too numerous to cite, dealt with the statute providing for certificates of necessity and convenience to motor vehicle carriers, and held that it is not void, although it is so drawn that the board of public works can, if it sees fit, under proper circumstances, provide for one certificate upon one route.

Were appellant's contention to be accepted, the effect of it would be to determine that the statute referred to is unconstitutional and void. It has been settled that it is not. We conclude that there is no merit in this contention of appellant.

[5]  It is next contended that the court erred in sustaining the demurrer to its fifth affirmative defense. That defense alleged a lack of consideration for the contract. This also is based principally upon the assertion that appellant did not receive a sole certificate, but that immediately thereafter certificates were issued to several other individuals to operate upon the same route.

As heretofore stated, this situation was not brought about by respondent, if it existed, and appellant received the consideration that it proposed, and cannot now be heard to say that there was no consideration for it.

[6]  It is next urged that the court erred in sustaining the demurrer to its sixth affirmative defense. This defense attempted to set up that, if there was a valid consideration for the contract between the parties in the beginning, that consideration had failed both in whole and in part. This, also, is based principally upon the contention that appellant did not secure a sole certificate as between itself and other stage operators upon the same route. It is stated that, if appellant had received such a sole certificate, it could well have afforded to pay the $7,000 contracted to be paid for it. What we have said about the matter of a sole certificate as between these parties applies also to this affirmative defense, and the demurrer to it was properly sustained.

[7]  The next contention is that the court should have dismissed, or at least have stayed proceedings in this case, until the attorneys for respondent should be shown to have authority to maintain the suit. One of the attorneys was the secretary and a stockholder of the corporation, and attorney for it generally, as the record shows. As secretary, he verified the pleadings.

His authority was presumed therefrom.   There is no merit in this contention.

[8]   It is finally contended that the trial court erred in denying appellant's motion to strike certain items from the cost bill of appellant.

An examination of the record fails to disclose any reason why witness fees paid by respondent were not properly taxed.   It is also contended that the expense of a certified copy of the order of the state board of public works should not be allowed as a part of the costs, for the reason that it was wholly unnecessary as the material facts therein were admitted in the pleadings.

The order of the state board of public works was certified by its secretary as a true and complete copy, and, since it was a competent piece of evidence which the trial court probably desired as did we, to inspect, we see no reason why the cost of it should not be taxed as costs.

An examination of the entire record in this case convinces us that the judgment of the trial court was right.

Affirmed.

Tolman, C. J., Askren, Fullerton, and Bridges, JJ., concur.