[No. 23138.   Department One.   September 10, 1931.]

THE STATE OF WASHINGTON, *on the Relation of the Department of Public Works, Respondent,* v. INLAND FORWARDING CORPORATION, *Appellant.*[1]

[1]Reported in 2 P. (2d) 888.

*Forrest H. Sweet* and *Grady & Velikanje,* for appellant.

*The Attorney General* and *John C. Hurspool, Assistant,* for respondent.

*Geo. F. Yantis, H. C. Brodie,* and *Madison & McGlinn, Amici Curiae.*

*Cleland & Clifford, Amicus Curiae.*

MITCHELL, J.—This action was brought on behalf of the state by the department of public works against the Inland Forwarding Corporation, a corporation, to enjoin it from operating freight trucks, in a business the corporation had organized, over a regular route between Seattle and Yakima, this state, because the corporation was not the holder of a certificate of convenience and necessity, as required by the act of the legislature of 1921 for the additional supervision and regulation of the transportation of persons and property for compensation over public highways by motor propelled vehicles. The trial resulted in injunctive relief as prayed for, the injunction being stayed by order of court pending the appeal. The corporation has appealed.

There is no disputed question of fact in the case; only questions of law are involved. On behalf of the

appellant, it is asserted that the only question in the case is the validity of the statutes referred to, the contention being that, in so far as they empower the department of public works to issue a certificate to one person or corporation to transport freight for hire for the public, by motor propelled vehicle on the public highways over a regular route or between fixed termini, and deny a similar right to others, they violate certain provisions of the constitution and are void.

■ ██ The first provision of the state constitution spoken of is Art. XII, § 22, which provides:

"Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership, or association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, through their stockholders, or the trustees, or assignees of such stockholders, or with any copartnership or association of persons, or in any manner whatever, for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity. The legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated companies, if necessary for that purpose, may declare a forfeiture of their franchise."

There is no claim or suggestion on behalf of the appellant that the cause of action arises out of any combination or contract, or attempt at either, direct or implied, between this corporation and another or others with reference to the public service involved, so that no part of the section of the constitution now being considered is involved except the first declaration in it that "Monopolies and trusts shall never be allowed in this state." It is argued that this declaration is as binding on the state as it is on individuals or private corporations, and that to give one public carrier of freight over a regular route or between fixed

points an exclusive right, creates a monopoly and must be condemned.

The statutes involved are Laws of 1921, Chapter 111, p. 340, Rem. Comp. Stat., §§ 6387 to 6397, the important ones of which, so far as this case is concerned, are §§ 3 and 4, as follows:

"Sec. 3. The 'Commission' of the State of Washington is hereby vested with power and authority, and it is hereby made its duty to supervise and regulate every auto transportation company in this state as such to fix, alter and amend just, fair, reasonable and sufficient rates, fares, charges, classifications, rules and regulations of each such auto transportation company; to regulate the accounts, service and safety of operations of each such auto transportation company; to require the filing of annual and other reports and of other data by such auto transportation companies; and to supervise and regulate auto transportation companies in all other matters affecting the relationship between such auto transportation companies and the traveling and shipping public. The Commission shall have power and authority, by general order or otherwise, to prescribe rules and regulations in conformity with this act, applicable to any and all such auto transportation companies; and within such limits shall have power and authority to make orders and to prescribe rules and regulations affecting auto transportation companies.

"The Commission may, at any time, by its order duly entered after a hearing had upon notice to the holder of any certificate hereunder, and an opportunity to such holder to be heard, at which it shall be proven that such holder willfully violates or refuses to observe any of its proper orders, rules or regulations, suspend, revoke, alter or amend any certificate issued under the provisions of this section, but the holder of such certificate shall have all the rights of re-hearing, review and appeal as to such order of the Commission as is provided for in Section 6 of this act." Rem. Comp. Stat., § 6389.

"Sec. 4. No auto transportation company shall hereafter operate for the transportation of persons and, or, property for compensation between fixed termini or over a regular route in this state, without first having obtained from the Commission under the provisions of this act a certificate declaring that public convenience and necessity require such operation; but a certificate shall be granted when it appears to the satisfaction of the Commission that such person, firm or corporation was actually operating in good faith, over the route for which such certificate shall be sought on January 15th, 1921. Any right, privilege, certificate held, owned or obtained by an auto transportation company may be sold, assigned, leased, transferred or inherited as other property, only upon authorization by the Commission. The Commission shall have power, after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate holder under this act, only when the existing auto transportation company or companies serving such territory will not provide the same to the satisfaction of the Commission, and in all other cases with or without hearing, to issue said certificate as prayed for; or for good cause shown to refuse to issue same, or to issue it for the partial exercise only of said privilege sought, and may attach to the exercise of the rights granted by said certificate to such terms and conditions as, in its judgment, the public convenience and necessity may require." Rem. Comp. Stat., § 6390.

What was then the public service commission, spoken of as the Commission, is now the department of public works.

By the enforcement and operation of such regulatory powers, the state does not barter or give away its right to protect its citizens against a certificate holder inclined to be monopolistic and oppressive. The so-called exclusiveness of the rights of a certificate holder to transport persons and/or property over a given route between fixed termini, is not without effective qualification and limitation. In the second paragraph

of § 3, Rem. Comp. Stat., § 6389, provision is made by which the state through its department may, without further aid from the legislature, under proper conditions and circumstances, suspend, revoke, alter or amend any certificate issued under the provisions of the law. The granting of franchises may, in some instances, be exclusive, but they are always subject to regulation, and may be cancelled whenever the holders fail to adequately and satisfactorily perform the duties of a common carrier. And, as stated in § 4 of the act, Rem. Comp. Stat., § 6390:

. "The Commission shall have power . . . when the applicant requests a certificate *to operate in a territory already served* by a certificate holder under this act, only when the existing auto transportation company or companies serving such territory will not provide the same to the satisfaction of the Commission, . . . to issue said certificate as prayed for; . . ."

Clearly, in scope these statutes embrace, among others, the situation of a territory already served by an existing auto transportation company or companies into which the department has the power to admit still another certificate holder, when, of course, the one or those already serving the territory do not provide satisfactory service.

The relation of the holders of certificates towards the public, as to whether it is monopolistic, must be measured not by their inclination or choice of possible oppression, but by ascertaining if they can be compelled to render fair and reasonable service at proper rates to the "satisfaction of the commission"—the state; and to say that, by the observance and enforcement of this law as to an existing auto transportation company or companies serving a given territory, monopoly is fostered, is inconsistent with the plainly

expressed intent and purpose of the law that all certificate holders shall furnish service, including rates, to the satisfaction of the state. The monopoly interdicted by the constitution is one whose activities are hostile and oppressive to the common welfare, rather than those which at all times are subject to the dominion, judgment and immediate regulation by the state.

In addition to the considerations thus expressed as to the validity of the statutes with respect to this prohibition in the constitution, as indicated by the terms of the statutes, we may examine certain of our cases that counsel have cited as favorable to their respective contentions. In this connection, it may be stated that a number of authorities from other jurisdictions, discussing statutes of a similar kind, have been called to our attention by respective counsel and urged or denied as being applicable, which authorities have been examined by us; but, as stated in effect in one of the briefs on behalf of the appellant, it is immaterial whether a similar statute having a similar purpose is or is not constitutional elsewhere,—the question is whether or not this statute is valid.

*North Springs Water Co. v. Tacoma,* 21 Wash. 517, 58 Pac. 773, 47 L. R. A. 214, is cited on behalf of the appellant in support of the contention, we understand, that the constitutional prohibition against monopolies is applicable to public service franchises. In that case, the party seeking injunction against competition in the exercise of rights under its franchise admitted that the city was without power to grant an exclusive franchise. To the same effect is *State ex rel. Telegraph Co. v. Spokane,* 24 Wash. 53, 63 Pac. 1116, cited by counsel, where the court said:

"The argument against the power to grant an exclusive privilege is sound, and is fully sustained in

the rule announced by this court in *North Springs Water Co. v. Tacoma,* 21 Wash. 517, 58 Pac. 773, 47 L. R. A. 214. But the question of the power to grant an exclusive privilege cannot arise here.''

The question in the present case, however, is not whether the legislature has the power to grant a public service franchise of the kind prohibited by the constitution, but, has it done so or attempted to do so by the statutes in question, and the cases just referred to afford no help in deciding that question, in our opinion.

The case of *Nicomen Boom Co. v. North Shore Boom & Driving Co.,* 40 Wash. 315, 82 Pac. 412, is also cited on behalf of the appellant. In that case, there was a contest between two boom companies with reference to the location of a boom site. The physical situation was such that the court said: ''The booms as proposed by the plaintiff and defendant cannot both be constructed.'' The location was awarded by the judgment of this court to the plaintiff-appellant, the one first in time by way of location and improvements as required by the statute. It was argued, as the court said, that, if the appellant was permitted to occupy all of its platted location, it would ''virtually place appellant in control of a monopoly of the booming business upon North River.'' But the court answered (showing the limited question to be decided):

''What may be the practical effect in that particular is not here for our consideration. We are simply called upon to determine appellant's rights under its location, as accorded to it by the state.''

The court then said:

''The legislature has wisely provided to prevent an oppressive monopoly as against the public by limiting the maximum charge that may be made by a boom company to seventy-five cents per thousand feet.''

Similarly, it may be said as to the present case that the legislature has wisely provided to prevent an oppressive monopoly against the public by giving the department power to issue a certificate to another person or corporation to operate in a territory already served whenever the one or ones already serving the territory will not provide service to the satisfaction of the department.

In the *Nicomen Boom Co.* case, just referred to, the court, after deciding the limited question involved as above stated, then called attention to an argument of counsel that the boom statutes contemplated that more than one boom may exist upon the same river, which argument the court said was true, showing that the legislature had thereby made it clear "that it did not intend to authorize an unconstitutional monopoly of a stream." This statement and other similar expressions by the court in that connection are urged in support of the appeal in the present case.

But such discussion was, as a matter of fact, unnecessary and beyond the limited question involved in that case; and besides, the fact that, by the terms of the boom statute, it was made clear that the legislature did not intend to create an unconstitutional monopoly; is not at all persuasive that, in the present case, different in substantial material respects as to the subject matter of the act, the legislature intended to authorize an unconstitutional monopoly. Justified conclusions in this respect are to be reached by a practical consideration of the scheme of the particular statute which, as already stated, is ample in the present case to protect the rights of the public, with respect to the provision of the constitution in question.

Nor is the case of *Manson v. Hunt,* 82 Wash. 291, 144 Pac. 45, in point. That case involved a contract between two steamboat companies which was held to

be invalid under the latter provisions of this article and section of the constitution. The case arose before steamboat companies were attempted to be regulated by statute creating the department of public works or its predecessor, and of course presented no question as to the validity of the act involved in the present case.

The cases of *Inter City Auto Stage Co. v. Bothell Bus Co.,* 139 Wash. 674, 247 Pac. 1040, and *American Export Door Corporation v. John A. Gauger Co.,* 154 Wash. 514, 283 Pac. 462, are mentioned first and are relied on by the respondent, and, in turn, criticised by counsel on behalf of the appellant. The first of the cases involved a contract made after the effective date of the legislative act we are now considering, between two competing applicants before the department for a certificate of convenience and necessity, by which they attempted to adjust the controversy between them and have the certificate run to one of them. It was a private contract made, as expressly stated in the contract, subject to the approval of the department of public works, thus recognizing the fact that the business of common carrier, as defined by the statutes, along the public highways of the state, was not a subject to be regulated by private treaty.

The other of the two cases involved a contract entered into by a number of industrial corporations of this state whose business was in no way attempted to be controlled by any regulatory body or commission. The contract was successfully attacked because it violated the constitutional provision against monopolies, and was void under the common law because it sought to accomplish an unreasonable restraint of trade.

Interesting as any attempt at analysis of these two cases would be, as having any effect upon the question now before us, we refrain from doing so because they

did not involve the precise question with which we are dealing. A number of other cases by this court are also mentioned by counsel, none of which proceed otherwise than upon the idea that the act in question is constitutional, but no one of them, as we understand, presents the precise question in this case. However, upon due consideration of the terms of the statutes and the manifest intention and purpose of the legislature, we are satisfied as already stated that they do not violate this provision of the constitution.

Closely akin to the question just discussed, it is further argued on behalf of the appellant that the statutes violate Art. I, § 12, of the constitution, which guarantees equal protection to all citizens. Reliance is had on a portion of subdivision "d," § 1 of the act wherein, after defining the term "auto transportation company," it says:

"Provided, that the term 'auto transportation company,' as used in this act, shall not include corporations or persons, their lessees, trustees, receivers or trustees appointed by any court whatsoever, insofar as they own, control, operate or manage taxicabs, hotel busses, school busses, motor propelled vehicles, operated exclusively in transporting agricultural, horticultural, or dairy or other farm products from the point of production to the market, or any other carrier which does not come within the term 'auto transportation company' as herein defined." Laws of 1921, p. 338; Rem. Comp. Stat., § 6387.

But that does not amount to a discrimination between common carriers or carriers of the same class. Those enumerated in the proviso are simply not included in the term "auto transportation company," as that term is used in the definition of common carriers under the act. Those that are stated or named as not included are not only those who

" . . . own, control, operate or manage taxicabs, hotel busses, school busses, motor propelled vehicles, operated exclusively in transporting agricultural, horticultural, or dairy or other farm products from the point of production to the market,"

but also

" . . . *any other carrier which does not come within the term 'auto transportation company' as herein defined.*"

In the last analysis, all of the language in the proviso is the equivalent of saying that all carriers who do not come within the term " 'auto transportation company' as herein defined," are excluded. Thus, in a way, all carriers are divided into two classes: first, those who come within the term "auto transportation company" as defined in the act, and second, those who, by exclusion do not—the one common carriers, the others not common carriers, the latter being commonly spoken of as private carriers. The act applies to the whole of one class and not to any of the other. The classification is natural and reasonable rather than arbitrary, and therefore within the recognized discretionary power of the legislature to classify. The classification creates a difference not in degree, but in kind, and treats alike all those included in the class of common carriers, while all other carriers are treated alike by not being included.

The case of *Smith v. Cahoon,* 283 U. S. 553, 51 Sup. Ct. 582, is cited and relied on by appellant in this respect. In our opinion, it is not helpful to the appellant, but, on the contrary, is authority indirectly for the other side. That case arose under a statute of Florida giving the state railroad commission power to regulate auto transportation companies. It defined "auto transportation company" substantially as our statute does, but the proviso to it was in one respect

materially different from ours. The proviso was as follows:

"Provided, that the term 'auto transportation company' as used in this Act, shall not include corporations or persons engaged exclusively in the transportation of children to or from school, or any transportation company engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and salt fish and oysters and shrimp from the point of production to the assembling or shipping point enroute to primary market, or to motor vehicles used exclusively in transporting or delivering dairy products or any transportation company engaged in operating taxicabs, or hotel busses from a depot to a hotel in the same town or city."

Smith was prosecuted for carrying on business as a private carrier for hire, in transporting merchandise for a tea company over the public highways of that state without having obtained a certificate of public convenience and necessity and without paying a tax as required by the statute. It was admitted by counsel in that case, and so considered by the court, that Smith was a private carrier. The court said:

"The statute on its face makes no distinction between common carriers and a private carrier such as the appellant. It applies, without any stated exception, to every auto transportation company within the statutory definition, and this admittedly included the appellant."

The finding and reasoning of the court was that, under that statute, there was no distinction between a common carrier and a *private carrier such as the appellant*—that is, a private carrier of merchandise for a tea company. The court said that that statute applied, without *any stated exception,* to every auto transportation company within the statutory definition, and that the appellant was therefore included; that is, the statute, in stating those not included in the term

"auto transportation company" as used in the act, did not state or mention a private carrier of merchandise for a tea company, as it did some others, and that therefore it was included within the definition of auto transportation company. It was held that the act was arbitrarily discriminatory and violated the constitutional guaranty of equal protection of the laws.

But that case is no authority here. That statute and ours are materially different in one very essential particular. That statute excluded only a few or certain enumerated private carriers, not mentioning the carriers of merchandise for a tea company, and, by necessary implication, included all other private carriers, thus providing for the regulation of some private carriers while others were left alone. It was an arbitrary classification within a class—a distinction without a difference. To have saved that statute, the legislature, upon enumerating certain kinds of private carriers and excepting them from the operation of the statute, as it did, should have further said *"or all other private carriers,"* just as our statute does; or, without specific enumeration of any kind of private carrier, simply excepted *all* private carriers, as our statute does, in effect, by using the words *"or any other carrier which does not come within the term 'auto transportation company' as herein defined."*

It is further contended that the statutes contravene Art. I, § 8, of the constitution, which provides:

"No law granting irrevocably any privilege, franchise, or immunity shall be passed by the legislature."

The argument is that, in conjunction with other provisions of the constitution relied on, the fundamental idea was to prevent the creation of a monopoly in auto transportation business. But we have already seen that the evil of that kind of monopoly, or any at all, has been provided against by the terms of the stat-

ute, fairly and reasonably interpreted, and to say that the issuance of a certificate of convenience and necessity, or permit to do business on the state's public highways that are always subject to its control, the business being at all times subject to regulation by the department as to service and fares, constitutes an irrevocable grant or privilege or franchise, is in a large way inconsistent, and has not been attempted by the statute, in our opinion.

■ Finally, it is claimed that the act is invalid because of the insufficiency of its title, under Art. II, § 19, of the constitution, which provides:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

The title of the act is as follows:

"An Act providing for the additional supervision and regulation of the transportation of persons, and property for compensation over any public highway by motor propelled vehicle: Defining transportation companies and providing for additional supervision and regulation thereof by the public service commission, providing for the enforcement of the provisions of this act and for the punishment of the violations thereof." Laws of 1921, p. 338.

The only argument made in support of this assignment is that the title is misleading in that the act actually grants or provides for monopoly in transportation, which subject is in no way indicated in the title. What we have said already, finding and holding that the statutes do not violate the constitutional provision against monopoly, is sufficient answer to the argument.

Affirmed.

TOLMAN, C. J., PARKER, HOLCOMB, and MAIN, JJ., concur.